******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JAVIER VILLANUEVA *v.* RAFAEL VILLANUEVA
(AC 43619)

Moll, Cradle and Clark, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, his brother, for breach of an implied in fact contract. The plaintiff started a landscaping company and, although the defendant started working for the plaintiff as an employee, they eventually became de facto equal partners, sharing the profits and management of the business. No written partnership agreement was ever entered into by the parties. At one point, the defendant formed a limited liability company with himself as the sole member because the plaintiff lacked a tax identification number, but the business of the LLC was a continuation of the landscape company started by the plaintiff and the parties remained partners. The defendant later locked the plaintiff out of the landscaping business, taking all the customers, crew, tools, vehicles, and equipment along with all the cash in two bank accounts, leaving behind certain masonry/tree equipment and vehicles. At that time, landscaping represented 90 percent of the business income and the portion left to the plaintiff represented only 10 percent of the revenue. The trial court found that an implied partnership existed between the parties and that the defendant breached the terms of the partnership agreement, and it rejected the defendant's special defenses. From the judgment rendered for the plaintiff, the defendant appealed to this court. *Held*:

1. The trial court's finding that there was an implied partnership agreement between the parties was not clearly erroneous; the court's finding was supported by ample evidence in the record that the parties regarded each other as partners, including evidence that both the plaintiff and the defendant were compensated by withdrawals from the business account for personal expenses, they jointly managed the business and shared its profits, and they jointly purchased real estate using corporate funds.

2. The trial court did not err in concluding that the plaintiff provided credible evidence of his damages; the court had broad discretion in determining its award of damages and, although the plaintiff's testimony was less than certain at times, the court was entitled to weigh that testimony, assess its reliability and credibility, and afford it whatever weight it deemed appropriate in concluding that the testimony, including testimony that when the defendant locked the plaintiff out of the business he took control of eighty-five customer accounts, including two condominium accounts worth $20,000, and took possession of several trucks and large pieces of landscaping equipment, provided sufficient evidence to enable the court to make a fair and reasonable determination as to the amount of damages.

3. The trial court properly concluded that the plaintiff's action was governed by the six year statute of limitations (§ 52-576 (a)); the plaintiff's one count complaint sounded in breach of an implied contract and did not assert a claim sounding in tort.

Argued April 22—officially released July 20, 2021

*Procedural History*

Action to recover damages for breach of contract, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the matter was tried to the court, *Krumeich, J.*; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*John R. Hall*, for the appellant (defendant).

*Mark M. Kratter*, for the appellee (plaintiff).

*Opinion*

CRADLE, J. In this case arising from a dispute between two brothers who operated a landscaping business together, the defendant, Rafael Villanueva, appeals from the judgment of the trial court, rendered after a court trial, in favor of the plaintiff, Javier Villanueva, and awarding the plaintiff damages in the amount of one half of the value of the business assets that the defendant maintained following the dissolution of that business. On appeal, the defendant claims that the court erred in finding that (1) an implied partnership existed between the parties, (2) the plaintiff provided credible evidence of his damages, and (3) the plaintiff's action was not barred by the statute of limitations. We affirm the judgment of the trial court.[1]

The trial court set forth the following relevant facts. "In 2005, [the plaintiff] started a small landscaping company, known as Villanueva Landscaping, that mowed lawns and did some patching and sealing pavement driveways. [The defendant] started working for [the plaintiff] in 2007; [the defendant] worked for him initially as an employee, but as the business grew the brothers became de facto equal partners, sharing the profits, and the management of the business. No written partnership agreement was ever entered into by the brothers. The brothers split their duties, as over time, one crew did landscaping and the other did masonry and tree work. [The plaintiff] worked on increasing the customer base and supervised a masonry/tree crew in the field; [the defendant] took over as bookkeeper and was responsible for paperwork, but also supervised the landscaping crew. The business grew from approximately twelve to fifteen customers during the first years, to approximately fifty customers in 2009, when they purchased a customer list from another landscaper, to approximately eighty-five customers in 2014. The number of workers grew from [the plaintiff] in 2005, to the original crew of two, [the defendant] and [the plaintiff], in 2007, to seven workers divided into two crews of four and three by 2014.

"Although initially [the plaintiff] received customer payments, [the defendant] took over the back-office work, including all billing and banking. The business deposited revenues into two bank accounts at Webster Bank and Bank of America, controlled by [the defendant]. [The plaintiff] did not have a tax [identification] number so the business accounts were opened by [the defendant] and he was in charge of deposits and withdrawals. Funds were withdrawn from the accounts by both brothers as needed to pay their personal expenses rather than drawing a salary.[2] On May 24, 2011, [the defendant] formed Villanueva Landscaping, LLC, with himself as sole member. The reason [the plaintiff] was not made a member was that he lacked a tax [identification] number, but the business of the LLC was the con-

tinuation of Villanueva Landscaping and the brothers remained partners.

"Sometime in 2014, [the plaintiff] found himself locked out of the landscaping business as [the defendant], without warning, took all the customers, crew, tools, vehicles and equipment used in the landscaping side of the business, together with all [of] the cash in the accounts.[3] [The defendant] left behind the masonry/ tree equipment and vehicles. In 2014, landscaping fees represented 90 [percent] of the business income. The portion left to [the plaintiff], the masonry and tree work, represented 10 [percent] of revenues. Although [the defendant] referred to the business being 'divided' in early 2014, the credible evidence is that there was no discussion or agreement about splitting the business, but, rather [the defendant] imposed the division on [the plaintiff] when he took over the landscaping portion of the business as his own, along with the funds in the accounts."

By way of a one count complaint dated June 19, 2018, the plaintiff commenced this action alleging the breach of an "unwritten and unspoken implied contract" between the parties. In response, the defendant filed an answer and three special defenses. By way of special defense, the defendant alleged that the plaintiff's claim was barred by the three year statute of limitations for an oral contract pursuant to General Statutes § 52-581 and/or the three year statute of limitations for conversion pursuant to General Statutes § 52-577. The defendant also alleged that the plaintiff's claim was barred by the doctrine of laches and that he was entitled to a setoff by the plaintiff's "retention of certain of the business assets in which both parties had an interest."

On October 30, 2019, following a brief court trial at which both parties testified, the court filed a memorandum of decision, wherein it found that an implied partnership existed between the parties and that the defendant breached the terms of the implied partnership agreement. The court rejected the defendant's special defenses, and awarded damages to the plaintiff in the amount of $86,500, representing one half of the value of the partnership property that had been taken by the defendant. This appeal followed.

I

The defendant first contends that the court erred in finding an implied partnership agreement between the parties. We disagree.

"It is well settled that the existence of an implied in fact contract is a question of fact for the trier. . . . Accordingly, our review is limited to a determination of whether the decision of the trial court is clearly erroneous. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling. . . .

"With respect to implied in fact contracts, we have recognized that [w]hether [a] contract is styled express or implied involves no difference in legal effect, but lies merely in the mode of manifesting assent. . . . A true implied [in fact] contract can only exist [however] where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words." (Citations omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Proctor*, 324 Conn. 245, 258–59, 152 A.3d 470 (2016).

Here, the court found that "there is strong evidence the parties were *de facto* partners." The court reasoned: "Although perhaps [the] plaintiff initially hired [the] defendant as an employee, the credible evidence is that, in later years, they regarded each other as partners compensated by withdrawals from the business accounts for personal expenses, which may be characterized as draws and distributions; not salary." The court further explained: "Although they divided their responsibilities between front office and back office, and by areas of the business, landscaping and paving, they acted as mutual agents and jointly managed the business and shared its profits. The LLC was formed to facilitate the business' finances, banking and reporting but, as between themselves, the brothers remained general partners. Their joint purchase of real estate using corporate funds epitomized the informal understanding between the brothers. The informal nature of distributions and draws, and the absence of contrary credible proof, suggests they were equal partners. The totality of evidence satisfied the test for formation of a partnership . . . ."

The defendant argues that, "[w]hile the actions of the parties as found by the trial court in this matter would appear to provide a basis for finding an implied partnership agreement, such a finding cannot survive the plaintiff's own denial that any such agreement existed." Although the defendant accurately recounts the plaintiff's testimony denying the existence of a partnership agreement, the court's finding that, by his conduct, the plaintiff manifested an intent to operate the business alongside the defendant is amply supported by the record. We therefore conclude that the court's finding of an implied partnership was not clearly erroneous.

## II

The defendant next claims that the court erred in concluding that the plaintiff provided credible evidence of his damages. We are not persuaded.

"Well established legal principles govern our review of damage awards. In an action for breach of contract, [t]he plaintiff has the burden of proving the extent of the damages suffered. . . . Although the plaintiff need not provide such proof with [m]athematical exactitude . . . the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. . . . Our Supreme Court has held that [t]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . In other words, we are constrained to accord substantial deference to the fact finder on the issue of damages. . . . Under the clearly erroneous standard, we will overturn a factual finding only if there is no evidence in the record to support it . . . or [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, 202 Conn. App. 315, 353, 245 A.3d 804, cert. denied, 336 Conn. 933, 248 A.3d 709 (2021).

In addressing damages here, the court reasoned: "The plaintiff here has not sought lost profits or an accounting, but rather has claimed damages based on the value of the assets taken by the] defendant. The defendant has asserted the right to [a] setoff for the value of assets retained by the plaintiff. Neither party has provided evidence as to the value of the business as of the split-up or today or what each would have received in a distribution upon liquidation, but rather have based their claims for damages and [a] setoff on very incomplete and subjective evidence of the value of all the partnership property at the time of the split-up.[4] The defendant took assets with a minimum value of $173,000 based on the most credible testimony as to historic cost of equipment and customer list purchase pricing used to approximate their value in 2014. If the partnership had sold these assets that is the minimum amount that would have been available for distribution assuming all other partnership liabilities and revenues off set. The evidence as to the value of assets retained by the plaintiff is sketchy at best, and [the] defendant abandoned those assets to the plaintiff when he walked out with

the landscaping business, so the court declines a set off. The plaintiff is awarded one-half of the value of the partnership property taken by the defendant, $86,500, as damages for breach of the partnership agreement."

In challenging the trial court's award of damages, the defendant argues that "[t]he 'very incomplete and subjective evidence' [that] the court had before it was exclusively the result of the plaintiff's testimony—no documentation (invoices, repair bills, parts orders, customer lists) was introduced, [nor was there any testimony of] nonparty witnesses. . . . [T]his almost total absence of any contemporaneous record of the value of the assets should have raised serious credibility [questions] for the court." Although the only evidence of damages was the plaintiff's testimony, which, at times, was less than certain, the trial court, as the trier of fact, was entitled to weigh the plaintiff's testimony, assess its reliability and credibility, and afford it whatever weight it deemed appropriate. The plaintiff testified that, when he was locked out of the business, the defendant assumed control of approximately eighty-five customer accounts, including two condominium complexes. The plaintiff testified that the condominium accounts were each worth $20,000, and the individual accounts were worth between $1000 and $1500 each. The plaintiff also testified that the defendant maintained possession of several trucks and various larger pieces of landscaping equipment, including a trailer, a chipper, a backhoe, and multiple commercial mowers. The plaintiff testified to the approximate value of each vehicle and larger piece of landscaping equipment, and also testified that the defendant took possession of approximately $7500 worth of smaller tools, including hand tools, ropes, backpack blowers, weed wackers and a sprayer. On the basis of the foregoing, the court found that the plaintiff met his burden of providing the court with sufficient evidence to enable the court to make a fair and reasonable determination of the amount of damages awarded to the plaintiff. Having reviewed the evidentiary record before the court and affording the trial court the broad discretion to which it is entitled in awarding damages, we are not convinced that the damages award was clearly erroneous or that a mistake was made.

### III

The defendant finally argues that the trial court erred in rejecting his special defense that the plaintiff's action was barred by the statute of limitations under § 52-577.[5] The trial court rejected the defendant's argument that the plaintiff's action was barred by the statute of limitations with little discussion. The court held: "The statute of limitations for breach of an implied contract is six years pursuant to [General Statutes] § 52-576 (a). This action was timely commenced less than four years after the defendant took partnership property to start his

own landscaping business." The defendant claims that the trial court applied the wrong statute of limitations, arguing that the plaintiff's cause of action is governed by the three year statute of limitations for conversion or breach of fiduciary duty, set forth in § 52-577.

"The determination of which, if any, statute of limitations applies to a given action is a question of law over which our review is plenary." *Government Employees Ins. Co.* v. *Barros*, 184 Conn. App. 395, 398, 195 A.3d 431 (2018). The plaintiff's one count complaint sounded in breach of an implied contract and did not assert a claim sounding in tort. We therefore agree with the trial court's conclusion that the plaintiff's action was governed by the six year statute of limitations set forth in § 52-576 (a).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also claims that the court erred in finding that the plaintiff's claim was not barred by the doctrine of laches. The trial court summarily rejected the defendant's laches argument in a footnote, in which it stated: "The doctrine of laches is not applicable to this action and is not warranted under the facts found by the court, including lack of material prejudice to the defendant from the delay." On appeal, the defendant's claim that he was prejudiced by the plaintiff's delay in commencing this action appears to be limited to his argument that the plaintiff's testimony was riddled by his "fallible memory." This claim is unavailing.

[2] "They also withdrew funds from the business accounts in 2014 to jointly purchase a house for $150,000, the title to which was in both their names, which they owned 50/50."

[3] "[The plaintiff] testified that [the defendant] had emptied out the garage where the landscaping equipment was stored and called the police on [the plaintiff] when he tried to reclaim one of the vehicles."

[4] "The partnership has not been dissolved or wound down formally . . . . Neither party has sought an accounting from the other. Each partner accepted the de facto dissolution and winding down that occurred in 2014 and conducted their respective businesses separately since then. The Appellate Court has approved direct damages actions between partners in lieu of formal accountings to wind up a partnership in cases where no complex accounting is necessary. *Chioffi* [v. *Martin*], 181 Conn. App. 111, 145, 186 A.3d 15 (2018). The parties have waived any rights to an accounting."

[5] The defendant does not challenge on appeal the trial court's rejection of his special defense based on the statute of limitations under § 52-581.