******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RONALD DAIGNEAULT *v.* DANIELLE KOLASHUK ET AL.
## (AC 47259)

Suarez, Clark and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendants on his claims for, inter alia, statutory theft and breach of fiduciary duty. The plaintiff owned and operated an auto repair business, and, for approximately twenty-eight years, the plaintiff and his daughter, the defendant D, jointly operated the business. D's husband owned the defendant A Co., which periodically stored towed vehicles on the property of the business. The plaintiff claimed, inter alia, that the court improperly found that there was a de facto partnership between the plaintiff and D. *Held*:

The trial court's finding that there was a de facto partnership between the plaintiff and D was not clearly erroneous, as there was ample support in the record for such a finding.

This court declined to review various of the plaintiff's other claims, including claims that the trial court improperly found that joint account holders are joint owners of the account and that A Co. did not have an oral agreement to pay the business for the storage of vehicles, as those claims were inadequately briefed.

Argued April 23, 2025—officially released March 24, 2026

*Procedural History*

Action to recover damages for, inter alia, statutory theft, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Knox, J.*, granted the motion to dismiss filed by the defendant Auto Magic, LLC; thereafter, Matthew Kolashuk et al. were cited in as defendants; subsequently, the named defendant filed a counterclaim; thereafter, the case was tried to the court, *Jacobs, J.*; subsequently, the court, *Jacobs, J.*, granted the defendant Michael Kolashuk's motion for a directed verdict and rendered judgment thereon; judgment for the named defendant et al. on the complaint and for the named defendant on the counterclaim, from which the plaintiff appealed to this court. *Affirmed*.

*Frank J. Liberty*, for the appellant (plaintiff).

*Kyle J. Zrenda*, with whom was *Isabel V. Del Vecchio*, for the appellee (named defendant).

*Michael J. Kopsick*, for the appellee (defendant Absolute Auto Body, Inc.).

*Opinion*

SUAREZ, J. The plaintiff, Ronald Daigneault, individually and doing business as Superior Auto Center (Superior Auto), appeals following the judgment of the trial court rendered in favor of the defendants Danielle Kolashuk, individually and as trustee of the Daigneault Family Irrevocable Trust (trust), Michael Kolashuk, individually and as successor trustee of the trust, and Absolute Auto Body, Inc. (Absolute Auto), on all counts of the plaintiff's revised third amended complaint.[1] On appeal, the plaintiff claims that (1) the court improperly found there was a de facto partnership between the plaintiff and Danielle, (2) the court improperly found that joint account holders are joint owners of the account, (3) the court's decision was clearly erroneous, (4) the court improperly found that Absolute Auto did not have an oral agreement to pay Superior Auto for the storage of vehicles, and (5) the court improperly found that, because Danielle was a de facto partner of the plaintiff, her actions did not constitute statutory theft or breach of fiduciary duty.[2] We disagree with the plaintiff's first

[1] Also named as defendants in this action were Matthew Kolashuk and Michael Kolashuk, as legal guardian of John Doe 1 and John Doe 2. The defendants Matthew Kolashuk, John Doe 1 and John Doe 2 are beneficiaries of the trust. These defendants are not participating in this appeal. For the sake of clarity, we refer to Danielle Kolashuk as Danielle and to Michael Kolashuk as Michael.

[2] The plaintiff's brief is not a model of clarity. In his principal appellate brief, the plaintiff characterizes his claims of error as follows: "Both legally and factually, the trial court erred in finding a de facto partnership between the [plaintiff] and [Danielle]," "[t]he trial court erred in finding joint account holders are joint owners," "[t]he trial court's decision is clearly erroneous," "[d]id the trial court err that [Absolute Auto] did not have an oral agreement with Superior Auto," and "[t]he trial court erred as to not finding conversion, civil theft, and breach of fiduciary duty." The plaintiff did not include a statement of issues pursuant to Practice Book § 67-4 (b). We have reframed the plaintiff's

claim and conclude that the remaining claims are inadequately briefed. Accordingly, we affirm the judgment of the trial court.

The following procedural history and facts, as found by the trial court or otherwise undisputed in the record, are relevant to our resolution of this appeal. The plaintiff owned and operated Superior Auto, a business that maintained and repaired automobiles. Superior Auto is located at 92 Stonington Road in Norwich (Stonington property). Danielle is the plaintiff's daughter and the trustee of the trust. Danielle worked with the plaintiff at Superior Auto for nearly three decades. From the late 1980s until 2016, the plaintiff and Danielle jointly operated Superior Auto. In 2007, and again in 2011, the plaintiff executed power of attorney agreements in which he granted Danielle the unilateral authority to make gifts on his behalf. The 2011 power of attorney, which was in effect at the time of the underlying events, provided in relevant part: "I, Ronald Daigneault . . . do hereby appoint my daughter, Danielle M. Kolashuk . . . [m]y [attorney-in-fact] TO ACT . . . [i]n my name, place and stead . . . to make gifts of any assets owned by me or any interest in property owned by me to . . . my issue, including my attorney-in-fact . . . . All such gifts may be made at such times and in such amounts as my attorney-in-fact may determine in his/her sole and absolute discretion." On April 18, 2017, the plaintiff revoked both power of attorney agreements. Michael is Danielle's husband and the owner of Absolute Auto. Michael is also the successor trustee of the trust. In 2015, Danielle discovered that the plaintiff was having an extramarital affair and confronted the plaintiff. According to the plaintiff, Danielle then attempted to blackmail him and demanded that he leave the business, or she would reveal his extramarital affair to his wife.

In July, 2018, the plaintiff commenced the present action against the defendants. The revised third amended

claims, in some instances condensing closely related claims, to more accurately reflect the arguments in his briefs. See, e.g., *Doe* v. *Quinnipiac University*, 218 Conn. App. 170, 173 n.4, 291 A.3d 153 (2023).

complaint (operative complaint) was filed on February 15, 2022. Counts one through five of the operative complaint were brought against Danielle in her individual capacity or as trustee of the trust and sounded in statutory theft, conversion, forgery, and breach of fiduciary duty. Count six sought termination of the trust.[3] Count seven was brought against Absolute Auto, alleging failure to pay storage fees. Counts eight and nine were brought against Michael and sounded in statutory theft and conversion. Count ten was brought against Danielle and asserted a claim of fraudulent concealment pursuant to General Statutes § 52-595.[4] With respect to the counts of statutory theft and conversion brought against Danielle, the plaintiff alleged that Danielle "used [her power of attorney] to withdraw $30,440.06 in October and November, 2015, for her own personal use" and stole "approximately $614,583.43 from [Superior Auto]." With respect to the forgery count, the plaintiff alleged that Danielle forged his name on his retirement check and on additional checks from Superior Auto. With respect to the count of breach of fiduciary duty brought against Danielle as attorney-in-fact, the plaintiff alleged that Danielle breached a duty owed to him under the power of attorney. With respect to the count of breach of fiduciary duty brought against Danielle in her capacity as trustee, the plaintiff alleged that Danielle failed to pay property taxes on a certain property located in Voluntown (Voluntown property), which was owned by the trust.

On May 10, 2023, Danielle filed an answer generally denying the allegations of the operative complaint. By way of special defense, she alleged that, "[t]o the extent the plaintiff makes claims and seeks damages for any allegedly tortious action of any party accruing more than three years prior to the initiation of the lawsuit, all such

---

[3] It appears from the plaintiff's principal appellate brief before this court that he is not challenging the court's judgment as to count six.

[4] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

claims and damages are barred by applicable statute of limitations," "[t]he plaintiff retained a life use on the [Voluntown property] and, therefore, payment of taxes on the property was his responsibility, and not that of [any] trustee of the [trust]," "[a]t all material times, the plaintiff was a signatory to all bank accounts in question and/or account holder to any other financial accounts in question and had access to all business books, computers, records and tax returns . . . [and] [t]he plaintiff, through his own incompetence, neglect or disinterest, [h]as caused or contributed to his own claim for damages and loss," "[t]he plaintiff acted with unclean hands and is therefore barred from recovery," and "[s]ome or all of the claims of the [plaintiff] are barred as he implicitly or expressly consented to the actions of [Danielle]." Danielle also filed a counterclaim seeking a partition of the Stonington property.

Michael filed an answer to the plaintiff's original complaint in which he generally denied the plaintiff's allegations. By way of special defense, he asserted that the claims against him were barred by the statute of limitations, that the plaintiff was responsible for payment of property taxes at the Voluntown property, that the plaintiff was a signatory to all bank accounts from which Danielle allegedly stole and to any other financial accounts in question, that the plaintiff's alleged losses were due to "his own incompetence, neglect or disinterest," and that the plaintiff "fail[ed] to state a cause of action" because no "legal duty [to protect the plaintiff from the alleged actions of Danielle] exists or can be imposed upon [Michael]."

Absolute Auto also filed an answer to the plaintiff's original complaint generally denying the allegations against it and, by way of special defense, alleged that it had permission and consent of a duly authorized owner of the property to store towed vehicles at Superior Auto and that the plaintiff's claims were barred by the applicable statute of limitations.

The court, *Jacobs, J.*, held a trial over the course of eight days between June and August, 2023. The court heard testimony from, inter alia, the plaintiff; the plaintiff's forensic expert, Nancy Riella; Danielle; and Michael. The court also admitted several exhibits into evidence. Posttrial briefs were filed thereafter. At the close of the plaintiff's case, Michael made a motion for a directed verdict, which the court granted.[5] On December 21, 2023, the court issued a memorandum of decision, in which it rendered judgment against the plaintiff on all counts of the plaintiff's operative complaint and in favor of Danielle on her counterclaim.[6]

In its memorandum of decision, the court found that it "did not find the testimony of [the plaintiff] to be credible. His assertion that [Danielle], with whom he had worked for nearly three decades, was not his de facto business partner belies the fact that he had conveyed to her a 28 percent stake in the [Stonington property] with the intention of making still further conveyances to her of his interest in the land; that he held her out to the world as his partner; that he made her a joint holder of his business accounts; that he had once named her in corporate filings as a joint holder of his business accounts; that he had once named her in corporate filings as the vice president of the corporation; and that he had entrusted to her the complete and unfettered operation of the business, thereby enabling him to do nothing more each day than turn a wrench. He denies knowing of and acquiescing to [Danielle's] use of Superior Auto funds for personal needs and wants but expresses regret for having allowed her to do that. He accuses her of looting his business when he was, himself, using Superior Auto as his own personal piggy bank. The evidence indicates

---

[5] The plaintiff does not challenge on appeal the court's judgment as to Michael.

[6] Although the court found in favor of Danielle on her counterclaim, the court did not order a sale of the Stonington property, as she had requested. Rather, the court ordered a hearing to be held to determine the fair market value of the Stonington property to "enable the equitable distribution of the property with payment to [Danielle] of just compensation for her interest in that property."

that they were every bit a team and that [the plaintiff] regarded them as a team until Danielle outed her father's infidelity, prompting him to then deny that they had ever been a team. He would have the court believe that the same daughter who had encouraged him to have an extramarital affair reacted angrily—even threatening to blackmail him—upon discovering that he was having an extramarital affair." (Emphasis omitted; internal quotation marks omitted.)

The court also found that "[Danielle's] testimony is not without its infirmities. The court has little doubt that Danielle liked to gamble and that she probably took Superior Auto income to the casino, though the record does not bear out a record of large gambling losses or other signs of compulsivity. She claims, persuasively, that she was a partner in Superior Auto but filed a claim for unemployment compensation as a W-2 wage earner after she had separated from the business, raising the specter of unemployment compensation fraud and calling into question her own credibility. The court doubts the veracity of her inability to recall withdrawing funds from the Superior Auto account and depositing them into her personal account at Mohegan Sun. Likewise, the court finds her testimony that certain checks that were written to her on the Superior Auto account were intended as either cash for [the plaintiff] or vendor labor to be lacking in credibility. Still, on balance, the court finds her testimony to have been more credible than [the plaintiff's testimony]." (Footnote omitted; internal quotation marks omitted.)

The court further found that the plaintiff "gave Danielle carte blanche to run the business of Superior Auto. And run it she did, with her hands both on the books and the cars themselves, towing them, changing oil, repairing brakes, doing tune-ups. Like her father, she used funds from the Superior Auto account to pay for personal expenses, including property taxes on the various properties that she and her husband owned. Like her father, she gifted Superior Auto funds to herself. She did all of this

with her father's imprimatur, however tacit, as a joint holder of the Superior Auto account and an Ameritrade account and having received unrestricted gifting powers from him by way of a power of attorney, which he executed, freely and voluntarily, in the presence of his attorney. . . . [T]he evidence shows that, as his de facto partner, [Danielle] had as much right to the Superior Auto funds as [the plaintiff] did. Thus, the court finds that the plaintiff has not proven that, more likely than not, Danielle converted funds rightfully belonging to the plaintiff . . . ." (Emphasis omitted; footnotes omitted.)

According to the court, Danielle "used the Superior Auto accounts as her own piggy bank . . . ." The court, however, found that she, "as a joint holder of those accounts and her father's de facto partner, and knowing that her father did so . . . reasonably believed that she, too, had the right to do so . . . ." The court further found that there were no "explicit limitations placed on her right to use the funds in those accounts . . . ." Finally, the court found that, "having been granted the unrestricted power to gift [the plaintiff's] assets to herself [Danielle] reasonably believed that she could use funds in his investment and retirement accounts with impunity . . . ." The court stated that "[t]he powers bestowed on an attorney-in-fact by a power of attorney are typically checked by the attorney-in-fact's fiduciary responsibility to the giver of those powers. Not so here, where [the plaintiff] gave [Danielle] the unfettered power to make gifts to herself, her spouse and her issue and where [General Statutes § 1-350m (a) (3)][7] authorizes an attorney-in-fact to act within the scope of the authority granted. Why he gave her that power is unknown. But having executed that power of attorney freely and voluntarily in the presence of his friend and attorney, Michael

_____

[7] General Statutes § 1-350m (a) provides: "Notwithstanding provisions in the power of attorney, an agent that has accepted appointment shall: (1) Act in accordance with the principal's reasonable expectations, and, if such expectations are unknown, make reasonable efforts to ascertain the principal's expectations and act, otherwise, in the principal's best interest; (2) Act in good faith; and (3) Act only within the scope of authority granted in the power of attorney."

Lahan, and two witnesses, [the plaintiff's] claims that he did not intend to give [Danielle] that unfettered power and that he did not understand the implications of the gifting power ring hollow." (Footnote added.) The court concluded that "the gifts were not grifts, and profligacy is not a tort."[8]

In rejecting the plaintiff's claim of forgery, the court found that "the only proof of forgery is the plaintiff's self-serving testimony, and the court has found his testimony to be lacking credibility." Additionally, the court found that the plaintiff "admitted that he had no idea who had forged his signature." The court, therefore, concluded that "the plaintiff's forgery claim fails."

In rejecting the plaintiff's claim of breach of fiduciary duty to Superior Auto, the court found that the plaintiff had failed to meet his burden of proof. Specifically, the court found that "the use of Superior Auto funds for the personal benefit of its owners was Superior Auto's modus operandi and, if this is the way they did business, the court cannot find that [Danielle], in doing business in this usual and customary—if unconventional—way, breached her fiduciary duty to Superior Auto." (Emphasis omitted.) The court further found that, "[t]o the extent that the plaintiff claims that [Danielle] breached her fiduciary duty to him as his attorney-in-fact, that claim fails due to the vastness of the gifting power [that] he had freely and voluntarily given to his daughter. Moreover, the court rejects as lacking credibility the claims that [Danielle] used her power of attorney to take out a $100,000 home equity loan against the plaintiff's property in Lisbon, Connecticut, and a loan against a life insurance policy insuring the life of the plaintiff."

In rejecting the plaintiff's claim against Absolute Auto for failure to pay towing and storage charges, the court found that "the towing and storage arrangement as between [Absolute Auto] and Superior Auto was one of mutual convenience and benefit between family members

---

[8] The court rejected the plaintiff's claim of statutory theft for the same reasons.

for which no payment was expected . . . ." The court credited "the testimony of [Danielle] that, as a de facto owner of Superior Auto and owner of 28 percent of the land on which the vehicles were stored, she permitted . . . Absolute Auto . . . to store towed vehicles there. The court finds [the plaintiff's] claim that [Absolute Auto] had agreed to pay Superior [Auto] for storing vehicles at Superior [Auto] to be nothing but an invention conjured up by the [plaintiff] in his vindictive rampage."

Finally, with respect to Danielle's counterclaim for partition of the Stonington property, the court concluded that, "[a]s [Danielle] has only a 28 percent interest in the [Stonington property] and as Superior Auto is situated on that property, the court finds that a sale would not promote the interests of the owners and, therefore, orders, pursuant to [General Statutes § 52-500 (a)],[9] such equitable distribution of the property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners."[10] (Footnote added.) This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly found that there was a de facto partnership between the plaintiff and Danielle. We are not persuaded.

[9] General Statutes § 52-500 (a) provides: "Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners. If the court determines that one or more of the persons owning such real or personal property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners."

[10] We note that the court did not expressly address count ten of the operative complaint, alleging fraudulent concealment of a cause of action. It is not disputed, however, that the court did not reach the defendants' statute of limitations defenses, and any allegation relating to the doctrine of fraudulent concealment would have been relevant only as a potential avenue to toll the applicable statute of limitations. See, e.g., *Curto* v. *Hartmann*, 235 Conn. App. 40, 49–50, 344 A.3d 1244 (2025).

The parties disagree over the proper standard of review that should apply to this claim. The plaintiff asserts that his claim involves "review of the trial court's legal and factual determination that there was a de facto [partnership]" and, therefore, this court should apply plenary review. Danielle counters that the court should "apply a clearly erroneous standard to its review of the trial court's finding of a partnership." We agree with Danielle that the clearly erroneous standard of review applies because the existence of a de facto partnership is a question of fact for the trier. See *Villanueva* v. *Villanueva*, 206 Conn. App. 36, 40, 260 A.3d 568, cert. denied, 338 Conn. 913, 259 A.3d 653 (2021).

General Statutes § 34-301 (12) defines the term "[p]artnership" as "an association of two or more persons to carry on as co-owners a business for profit formed under section 34-314,[11] predecessor law or comparable law of another jurisdiction . . . ." (Footnote added.) Moreover, § 34-301 (13) defines the term "[p]artnership agreement" as the "agreement, whether written, oral or implied, among the partners concerning the partnership, including amendments to the partnership agreement."

This court recently had occasion to review the appropriateness of a trial court's finding of an implied, or "de facto," partnership.[12] In *Villanueva* v. *Villanueva*, supra, 206 Conn. App. 36, a case similar to the present one, the trial court found that the plaintiff started a small landscaping business in 2005. Id., 38. In 2007, the defendant, who was the plaintiff's brother, started working for the plaintiff in the landscaping business "initially as an employee, but as the business grew the brothers became de facto equal partners, sharing the profits, and the management of the business. No written partnership

---

[11] General Statutes § 34-314 provides in relevant part: "Except as otherwise provided in subsection (b) of this section, the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership. . . ."

[12] "An implied partnership may be labeled a 'de facto' partnership." 68 C.J.S. 273, Partnership § 23 (2020).

agreement was ever entered into by the brothers." (Internal quotation marks omitted.) Id. The trial court further found that the brothers split their duties, "as over time, one crew did landscaping and the other did masonry and tree work. [The plaintiff] worked on increasing the customer base and supervised a masonry/tree crew in the field; [the defendant] took over as bookkeeper and was responsible for paperwork, but also supervised the landscaping crew." (Internal quotation marks omitted.) Id. The court further found that the business accounts were "opened by [the defendant] and he was in charge of deposits and withdrawals. Funds were withdrawn from the accounts by both brothers as needed to pay their personal expenses rather than drawing a salary." (Internal quotation marks omitted.) Id., 39.

"Sometime in 2014, [the plaintiff] found himself locked out of the landscaping business as [the defendant], without warning, took all the customers, crew, tools, vehicles and equipment used in the landscaping side of the business, together with all [of] the cash in the accounts." (Internal quotation marks omitted.) Id. After a court trial, the court issued a memorandum of decision in which it found that an implied partnership existed between the parties and the defendant breached the terms of the implied partnership agreement. See id., 40. Specifically, the trial court found that "there [was] strong evidence the parties were de facto partners." (Emphasis omitted; internal quotation marks omitted.) Id., 41. The defendant appealed to this court, claiming that the trial court improperly found that an implied partnership existed between the parties. Id., 37. This court affirmed the trial court's judgment. Id., 46. It explained that "[i]t is well settled that the existence of an implied in fact contract is a question of fact for the trier. . . . Accordingly, our review is limited to a determination of whether the decision of the trial court is clearly erroneous. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling. . . .

"With respect to implied in fact contracts, we have recognized that [w]hether [a] contract is styled express or implied involves no difference in legal effect, but lies merely in the mode of manifesting assent. . . . A true implied [in fact] contract can only exist [however] where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words." (Internal quotation marks omitted.) Id., 40–41.

This court in *Villanueva* concluded that the trial court's finding that, "by his conduct, the plaintiff manifested an intent to operate the business alongside the defendant [was] amply supported by the record." Id., 42. It therefore held that the trial court's finding of an implied partnership was not clearly erroneous. Id.

In the present case, the court similarly found that "[t]he evidence indicates that [the plaintiff and Danielle] were every bit a team and that [the plaintiff] regarded them as a team until Danielle outed her father's infidelity, prompting him to then deny that they had ever been a team." The court found that the plaintiff "had conveyed to [Danielle] a 28 percent stake in the land on which Superior Auto was situated with the intention of making still further conveyances to her of his interest in that land; that he held her out to the world as his partner; that he made her a joint holder of his business accounts; that he had once named her in corporate filings as the vice president of the corporation; and that he had entrusted to her the complete and unfettered operation of the business, thereby enabling him to do nothing more each day than 'turn a wrench.' " The court further found that Danielle "claims, persuasively, that she was a partner in Superior

Auto" and that the plaintiff "gave Danielle carte blanche to run the business of Superior Auto. And run it she did, with her hands both on the books and the cars themselves . . . . Like her father, she used funds from the Superior Auto account to pay for personal expenses . . . . Like her father, she gifted Superior Auto funds to herself. She did all of this with her father's imprimatur . . . ."

The record supports the court's finding that the plaintiff and Danielle were de facto partners in Superior Auto. At trial, Danielle testified that she was an owner of Superior Auto, and the plaintiff "for twenty-eight years [had stated] that [she] was an owner of that business also." She testified that she did "[a]bsolutely everything." According to Danielle, she worked on cars, towed cars, worked in the office, maintained the property, and plowed in the wintertime, "[a]s a business owner does." She further testified that the Superior Auto bank accounts were opened as joint accounts and that, for "[t]he twenty-eight years [she] was there," she had authority to sign checks. According to Danielle, she signed her name to payroll checks and paid other expenses "[b]ecause I owned that business also." Danielle further testified that she and the plaintiff signed paperwork for the creation of Superior Auto Center, LLC, in which the plaintiff was listed as president and she was listed as vice president.[13] Additionally, she testified that it was her understanding that the plaintiff gave her power of attorney "[t]o make sure that I had everything that I needed for the business and personally also, because it was known to be mine, or going to be mine, or was mine . . . ." She further testified that she and the plaintiff had a conversation in the late 1990s to discuss her being a partner with him when she realized she could have a career someplace else. According to Danielle, she was "told why leave it's my business too . . . ." Danielle further testified that she understood she had an oral agreement with the plaintiff that she was a partner and that she would make decisions for Superior Auto without needing to ask the plaintiff for

[13] It is undisputed that Superior Auto Center, LLC, was dissolved in 2006.

permission. Additionally, she stated that the plaintiff had transferred a 28 percent interest in the Stonington property to her over a four year period. The court's finding that, by the plaintiff's conduct, he manifested an intent to operate the business alongside Danielle is amply supported by the record. See, e.*g.*, *Connecticut Light & Power Co.* v. *Proctor*, 324 Conn. 245, 259–60, 152 A.3d 470 (2016) ("A contract implied in fact, like an express contract, depends on actual agreement. . . . However, [i]t is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. . . . Thus, the conduct of one party, from which the other may reasonably draw the inference of a promise, is effective in law as a promise. . . . As long as the conduct of [the] party is volitional and that party knows or *reasonably ought to know that the other party might reasonably infer from the conduct an assent to contract*, such conduct will amount to a manifestation of assent." (Citations omitted; emphasis in original; internal quotation marks omitted.)). We therefore conclude that the court's finding of a de facto partnership is not clearly erroneous.

## II

The plaintiff next claims that (1) the court improperly found that joint account holders are joint owners of the account, (2) the court's decision was clearly erroneous, (3) the court improperly found that Absolute Auto did not have an oral agreement to pay Superior Auto regarding towing and storage fees, and (4) the court improperly found that, because Danielle was a de facto partner of the plaintiff, her actions did not constitute statutory theft or breach of fiduciary duty. We conclude that these claims are inadequately briefed and, therefore, we decline to review them.

It is well settled that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract

assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . .

"[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98 cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005).

First, the plaintiff's appellant's brief does not comply with our rules of appellate procedure governing the format and substance of appellate briefs. Practice Book § 67-4 (b) provides in relevant part that an appellant's brief shall contain "[a] concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal, *with appropriate references to the page or pages of the brief where the issue is discussed* . . . ." (Emphasis added.) Although the plaintiff has provided a table of contents in his principal appellate brief in which he identifies four ways in which the court allegedly erred; see footnote 2 of this opinion; he has not provided a statement of issues pursuant to Practice Book § 67-4 (b).

Moreover, Practice Book § 67-4 (e) provides in relevant part that "argument on each point shall include *a separate, brief statement of the standard of review the appellant believes should be applied.*" (Emphasis added.) The plaintiff, however, has failed to provide the required standards of review for each of these remaining claims.

The plaintiff's procedural lapses might be forgivable if we were able to determine the substance of his claims and the underlying legal analysis. The plaintiff's brief, however, is confusing and disorganized. The plaintiff does not cite to any statutory authority for these claims and only cites to cases without any analysis.[14] The few legal principles that the plaintiff cites are not accompanied by sufficient analysis with regard to the applicability of the cited authority. See, e.g., *Taylor* v. *Mucci*, 288 Conn. 379, 383 n.4, 952 A.2d 776 (2008) (declining to review claims when party cited only one case and provided insufficient analysis). "It was incumbent on the plaintiff to provide a meaningful analysis of his claim[s] . . . and to include citations to relevant legal authority and an application of that law to the facts in the present case. . . . [I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Matusz* v. *Wellmore Behavioral Health, Inc.*, 234 Conn. App. 581, 593–94, 344 A.3d 208, cert. denied, 353 Conn. 926, 345 A.3d 811 (2025). The plaintiff seems to argue before this court his version of the facts that he presented before the trial court, without engaging in any meaningful analysis in support of his claims. To the extent that we are able to discern what claims the plaintiff does raise, we conclude that they are inadequately briefed.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] As to the plaintiff's claim that the court incorrectly concluded that a joint account holder is a joint owner, the plaintiff merely refers to General Statutes § 36a-290 and cites to three cases without providing sufficient analysis in support of his claim or explaining how § 36a-290 impacted the court's analysis. We further note that the trial court, in its memorandum of decision, did not state as a matter of law that joint account holders are joint owners. It merely quoted from § 36a-290 in a footnote when it found that Danielle's actions were taken with "[the plaintiff's] imprimatur, however tacit, as a joint holder of the Superior Auto account . . . ." (Footnotes omitted.) It did not, however, ground its conclusions on an application of § 36a-290.